UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN D. GARCIA,<br><br>                        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of the Social Security Administration,<br><br>                        Defendant. | Case No. 18-cv-2541-BAS-AGS<br><br>**ORDER:**<br><br>**(1) OVERRULING DEFENDANT'S OBJECTIONS (ECF No. 31);**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION (ECF No. 30);**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 22);**<br><br>**(4) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (ECF No. 24); AND**<br><br>**(5) REMANDING ACTION FOR FURTHER PROCEEDINGS** |

Plaintiff Brian D. Garcia, proceeding *pro se*, commenced this action seeking review of a final decision by the Social Security Commissioner ending his benefits under Titles II and XVI of the Social Security Act. The Court referred this matter to the Magistrate Judge for a Report & Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b)(1)(B)

and Civil Local Rule 72.1(c)(1).  After the parties filed cross-motions for summary judgment, U.S. Magistrate Judge Andrew G. Schopler issued an R&R recommending that this Court grant Plaintiff's motion (ECF No. 22) and deny the Commissioner's cross-motion (ECF No. 24).[1]  (ECF No. 30.)  The Commissioner then filed objections to the R&R.  (ECF No. 31.)  The Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

For the following reasons, the Court **OVERRULES** the Commissioner's objections, **ADOPTS** the R&R, **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** the Commissioner's Cross-Motion for Summary Judgment, and **REMANDS** this action for further proceedings and factual development consistent with this order.

**I.   ADMINISTRATIVE AND FACTUAL BACKGROUND**

In 2004, the Social Security Administration ("SSA") notified Plaintiff that he was eligible to receive disability benefits under the Social Security Act.  (Administrative Record ("AR") 54–59, ECF No. 19.)  In its letter to Plaintiff, the Agency specified that it would review Plaintiff's case in March 2005 and would continue his benefits—if he was still disabled.  (AR 57.)  In a decision dated June 9, 2005, Plaintiff was found disabled as of October 25, 2002, due to "advanced degenerative disc disease of the lumbar spine" and "morbid obesity."  (AR 14, 16, 88; *see also* AR 272.)  Around 2007, Plaintiff underwent gastric bypass surgery and lost approximately 250 pounds.  (AR 18, 36, 86, 325; *see also* AR 20.)

In a letter dated May 22, 2014, the SSA informed Plaintiff that based on medical reports it received, Plaintiff's condition is "not severe enough to keep [him] from working"; therefore, it determined that Plaintiff's disability had ceased as of May 2014.  (AR 68–71.)  On July 11, 2014, Plaintiff submitted a request for reconsideration regarding the cessation of his benefits.  (AR 72.)  In Plaintiff's request, he indicated that he was currently being treated by an orthopedic surgeon, Dr. William Tontz.  (AR 72; *see also* AR 81.)  After a

---

[1] The Court interprets Plaintiff's brief (ECF No. 22) as a summary judgment motion.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting documents filed *pro se* are "to be liberally construed").

- 2 -

hearing on March 17, 2015, a Disability Hearing Officer upheld Plaintiff's cessation of benefits. (AR 14; *see also* AR 85–94.) In the Disability Hearing Officer's Report, Dr. Tontz is listed as one of three doctors not contained in the claim's file but who relate to Plaintiff's alleged disability. (AR 77.) In the Summary of Evidence dated March 18, 2015, the same hearing officer indicated that there "was no opinion provided by a treating physician in file to consider, and there are no matters reserved to the Commissioner" when making this decision. (AR 89.) However, the summary noted Plaintiff's testimony that he saw Dr. Tontz within the last year, at which time Dr. Tontz "looked at [Plaintiff's] MRI and told him not to exercise, and that he was too young to fuse his spine." (AR 86.)

On April 8, 2015, Plaintiff—who was not represented by counsel—requested a hearing before an Administrative Law Judge ("ALJ"). (AR 101.) Plaintiff completed a Recent Medical Treatment form dated February 5, 2016, indicating, again, that he was currently being treated by his "surgeon," Dr. Tontz, "who said 'no work'" because his "back is in really bad shape." (AR 255.) Plaintiff attached a letter from Dr. Tontz stating that Plaintiff is "unable to perform any meaningful work secondary to severe nerve compression and arthritis in his lumbar spine." (AR 255–56.) On September 20, 2017, ALJ Ben Willner heard Plaintiff's case. (AR 33.) At this hearing, Plaintiff testified his "surgeon" said that Plaintiff "couldn't do any meaningful work," would need future surgery, and should not "do anything too strenuous or lifting," or else his "spine could collapse." (AR 44–45.)

In a decision dated September 29, 2017, the ALJ determined that Plaintiff had seen medical improvement and that his disability under sections 216(i) and 223(f) of the Social Security Act ended as of May 1, 2014. (AR 24–25.) In making his decision, the ALJ considered the opinions of four examining doctors who reported differing views on the exertional level that Plaintiff could tolerate. (AR 21.) In the first consultative evaluation from April 2014, Dr. Kirz concluded Plaintiff could tolerate a heavy exertional level. (AR 285–90.) The second examination concluding a light exertional level was conducted by Dr. Masters, a State Agency Consultant, in May 2014. (AR 299–300.) The third

examination was conducted in December 2014 by Dr. Sabourin, an Orthopedic Consultative Examiner, who concluded a light exertional level. (AR 325–29.) The fourth and final examination concluding a medium exertional level was conducted in December 2014 by Dr. Jacobs, a State Agency Consultant. (AR 339–42.) The ALJ afforded the most weight to the opinion of Dr. Jacobs adopting a medium exertional level assessment. (AR 21, 23.) The ALJ noted that both orthopedic consultative examiners observed an "exaggeration of symptoms." (AR 19; *see also* AR 285, 329.) The ALJ's decision does not mention Plaintiff's orthopedic surgeon, Dr. Tontz, despite the administrative record containing statements from Dr. Tontz and statements attributed to him. (AR 14–25; AR 255–56; *see also* AR 76, 86.)

On October 29, 2017, Plaintiff requested review of the ALJ's decision. (AR 178.) Plaintiff submitted a written statement with his appeal, stating that his "surgeon" told him that he needs his "spine fused soon . . . ." (AR 268.) Additionally, Plaintiff attested: "I have in my records that my surgeon [says] that I can't do any meaningful[ ] work. My back could collapse anytime." (*Id.*) On December 12, 2017, the Appeals Council notified Plaintiff that it had granted his request for more time before it acts on his case, giving him 25 days within the date of the letter to send the Appeals Council more information. (AR 9.) Plaintiff then submitted to the Appeals Council a letter from Dr. Tontz dated January 12, 2018, which states that Plaintiff "has been under my care since 2014," "is diagnosed with severe degenerative disc from L4-S1," and "has trouble with standing, sitting, twisting, stooping, and lifting." (AR 8.) Dr. Tontz additionally opined in his letter that Plaintiff "will require a complex anterior lumbar spinal fusion and will need to have extensive post operative follow up treatments." (*Id.*) Further, Dr. Tontz opined that Plaintiff "will be unable to work indefinitely because of his severe back injury and complex treatment he requires." (*Id.*)

The Appeals Council viewed this evidence but ultimately denied review of Plaintiff's case, therefore making the ALJ's decision final. (AR 1; *see also* AR 2, 12.) In a letter dated August 29, 2018, the Appeals Council found that the new evidence did not

relate to the period at issue, and therefore the evidence did not affect the decision about whether Plaintiff was disabled during the period evaluated by the ALJ. (AR 1–2.)

Plaintiff was unrepresented throughout the SSA's reconsideration of his cessation of benefits. (*See* AR 33–35, 178.) Continuing without counsel, Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. THE R&R

The R&R finds that the SSA wrongfully discounted a treating physician's letter supporting disability when the SSA incorrectly found that Dr. Tontz did not treat Plaintiff during the relevant time frame. (R. & R. 3:14–4:16.) The R&R concludes the SSA erred because Dr. Tontz's care took place during the period at issue. (*Id.*) It finds that Dr. Tontz's letter provides a stark difference in opinion regarding Plaintiff's medical condition and because of the traditional deference paid to treating physician's opinions, the error cannot be deemed harmless. (*Id.* 5:8–9.) Thus, the R&R recommends this Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Cross-Motion. (*Id.* 6:8–10.)

## III. LEGAL STANDARDS

### A. Review of the R&R

The court reviews *de novo* those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report).

### B. Review of a Denial of Social Security Benefits

A claimant may obtain judicial review of the Commissioner's final decision to deny benefits. 42 U.S.C. §§ 405(g), 1383(c). "As with other agency decisions, federal court

review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The district court "will disturb the denial of benefits only if the decision 'contains legal error or is not supported by substantial evidence.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). When reviewing whether the Commissioner's determination is supported by substantial evidence and free of error, the court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir 1998)).

The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). The court "may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035). The court's scope of review is limited, as it "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* at 1010.

Social Security proceedings "are inquisitorial rather than adversarial," and the ALJs who preside over them have a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality opinion); *see also Schiaffino v. Saul*, 799 F. App'x 473, 475 (9th Cir. 2020) (citing this proposition in *Sims* to find an ALJ erred by dismissing an ambiguous opinion when the ALJ should have further developed the record). Further, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing cases); *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971) ("[The social security hearing examiner] acts as an examiner charged with developing the facts."); *Armstrong v. Comm'r*

*of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) ("[T]he ALJ has a duty to assist in developing the record.").

## IV. ANALYSIS

The Commissioner objects to the R&R and disagrees with the Magistrate Judge's recommendation to remand this matter so that the ALJ may address the additional evidence from Dr. Tontz. (Objs. 1:23–2:11, ECF No. 31.)[2] The Commissioner contends that the ALJ's decision is supported by substantial evidence notwithstanding the evidence in question. Further, the Commissioner argues that any error that may be attributed to the Agency's treatment of Dr. Tontz's opinion is harmless because this evidence would not likely have changed the ALJ's ultimate conclusion that Plaintiff is no longer disabled. (*Id.* 2:7–11.) Having conducted a *de novo* review of the R&R, the Court will resolve the Commissioner's objections within the context of its overall analysis of the case at hand.

### A. Appeals Council's Consideration of Additional Evidence

Prior to the Appeals Council's denial of Plaintiff's request for review, Plaintiff submitted a letter by his treating physician, Dr. Tontz, dated January 12, 2018. (AR 8.) This letter was not provided to the ALJ during Plaintiff's proceedings but provided to the Appeals Council as new evidence. In denying Plaintiff's request for review, the Appeals Council explained that this new evidence "does not relate to the period at issue." (AR 2.) *See* 20 C.F.R. § 404.970(a)(5). In his Motion for Summary Judgment, Plaintiff argues that the Appeals Council committed a reversible error by failing to ensure that Dr. Tontz's opinion was properly considered.[3] (*See* Pl.'s Mot. Summ. J., ECF No. 22.) The R&R agrees with Plaintiff.

---

[2] For the Commissioner's Objections, the Court cites to the imprinted electronic case filing page numbers.

[3] "When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011); *see also Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) ("The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner." (citing 42 U.S.C. § 405(g))). Thus, the Court does not have jurisdiction to review the Appeals Council's decision to deny Plaintiff's request for review. *Taylor*, 659 F.3d at 1232. However, where the Appeals Council improperly rejects a physician's opinion,

When the Appeals Council receives a request for review that contains new evidence, it may choose between two options. First, it may "view" the evidence and then send the claimant a notice rejecting the evidence for a valid reason. 20 C.F.R. § 404.970(a)–(c). The Appeals Council may reject additional evidence if the claimant did not have good cause for his delay in producing the new evidence, or if the documents do not relate to the period on or before the date of the ALJ's decision. *Id.* Alternatively, the Appeals Council may "consider" the evidence as part of its decision-making process, incorporating the evidence into the official record regardless of whether it grants review. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162–63 (9th Cir. 2012) (noting the Appeals Council considered the claimant's new evidence but declined to review the ALJ's decision).

Here, the Appeals Council did not specifically advise Plaintiff that it had rejected or declined to accept Dr. Tontz's 2018 letter. (*See* AR 2.) Rather, the Appeals Council considered the evidence and incorporated it into the administrative record. (*See id.*; AR 6, 8.) Specifically, the Appeals Council addressed Plaintiff's additional evidence by writing:

> You submitted medical evidence from William Tontz, Jr. M.D., dated January 12, 2018, 2 pages. The Administrative Law Judge decided your case through September 29, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 29, 2017.
>
> If you want us to consider whether you were disabled after September 29, 2017, you need to apply again.

(AR 2.)

Therefore, the Court concludes that the Appeals Council considered, rather than rejected, Plaintiff's additional evidence. Two issues bear on the Appeals Council's consideration of Dr. Tontz's 2018 letter. The Court will address these issues in turn.

---

the Court may review the additional evidence submitted in its overall review of the Commissioner's final decision. *Id.* at 1232–33.

### 1. Relevant Period

The R&R determines the Appeals Council mistakenly concluded that Dr. Tontz's letter did not relate to the period at issue. (R. & R. 4:3–16.) The Appeals Council should grant review of an ALJ decision if a claimant presents additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also, e.g.*, *Edgecomb v. Berryhill*, 741 F. App'x 390, 393 (9th Cir. 2018) (finding that where a physician's letter submitted for the first time to the Appeals Council contained new and material evidence, it is considered in reviewing the ALJ's denial of benefits); *but see infra* Part IV.A.ii. This applies even if the evidence is dated after the relevant period, so long as the evidence discusses the claimant's medical history going back to the period in question. *Edgecomb*, 741 F. App'x at 393; *accord James Richard L. v. Comm'r of Soc. Sec. Admin.*, No. 2:19-CV-00008-RHW, 2020 WL 998811, at *4 (E.D. Wash. Mar. 2, 2020).

Here, the Appeals Council considered and addressed Plaintiff's new evidence. (*See* AR 2, 8.) However, the Appeals Council discounted Dr. Tontz's opinion on the mistaken reasoning that it "does not relate to the period at issue." (AR 2.) The Appeals Council did not explain its conclusion beyond noting that the letter was dated January 12, 2018, and that the relevant period ended September 29, 2017. (*Id.*) Therefore, the Court will conduct its own review of the letter to determine if it relates to the relevant period. *See Edgecomb*, 741 F. App'x at 393.

Dr. Tontz's letter is dated January 12, 2018, but it discusses Plaintiff's medical history going back to 2014, and at the very least October 2017. (AR 8.) In the letter, Dr. Tontz states that Plaintiff has been "under [his] care since 2014 and was last examined on 10-05-2017." (*Id.*) Dr. Tontz further states that Plaintiff "is diagnosed with severe degenerative disc from L4-S1 . . . ." (*Id.*) Dr. Tontz also notes that Plaintiff "was referred to a vascular surgeon in October of 2017, for medical clearance as he will require a complex anterior fusion, and will need to have extensive post operative follow up treatments." (*Id.*)

The ALJ's decision examined Plaintiff's "comparison point decision"—the Agency's prior disability determination—where his medically determinable impairments were "degenerative disc disease of the lumbar spine and morbid obesity." (AR 16.) Thus, Dr. Tontz's statements relate to the exact issues contested by Plaintiff and examined in the ALJ's unfavorable decision.

Further, the relevant period is "on or before the date of the hearing decision," which here is September 29, 2017—the date through which the ALJ had decided Plaintiff's case. (AR 2.) *See* 20 C.F.R. § 404.970(a)(5). The R&R correctly states that even if Dr. Tontz's opinion was based entirely on Plaintiff's last examination on October 5, 2017—six days after the relevant period ended—Dr. Tontz's opinion would still relate to the period at issue. (R. & R. 4:7–16 (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011)).[4]

Therefore, because Dr. Tontz's opinion concerns his assessment of Plaintiff's health condition during the period that he treated Plaintiff—and he claims to have treated Plaintiff since 2014—the opinion relates to the period Plaintiff was found not disabled. Thus, the Court agrees with the R&R's conclusion that the Appeals Council wrongly concluded that Dr. Tontz's letter did not relate to the period at issue.

### 2. Good Cause

The Commissioner objects to the R&R's conclusion, claiming that the Appeals Council could have appropriately denied review of Plaintiff's additional evidence for lack of "good cause." (Objs. 4:22–5:5.) As of January 17, 2017, the Appeals Council will only consider new evidence if the claimant "show[s] good cause for not informing [the SSA] about or submitting the evidence" sooner. 20 C.F.R. § 404.970(b); *see also id.* § 404.970(c)

---

[4] *See also Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."); *Smith v. Bowen*, 849 F.2d 1222, 1224–25 (9th Cir. 1988) (holding that three doctors' medical evaluations, occurring some three to nine years after the expiration of the insured status, were "relevant to an evaluation of the pre-expiration condition"); *Hartman v. Bowen*, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (explaining although plaintiff has to establish that disability existed prior to the expiration date, she is "not confined . . . to evidence in existence prior to that date").

(providing the Appeals Council may send a notice rejecting evidence where it "does not find [the claimant] had good cause for missing the deadline to submit the evidence" to the ALJ). This new regulation applied when Plaintiff submitted Dr. Tontz's letter to the Appeals Council. (*See* AR 2.)

The R&R correctly states that this Court need not wrestle with whether Plaintiff had good cause for the late submission, because the Appeals Council never determined otherwise. (R. & R. 5:20–25 (citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) ("We review only the reasons provided by the [SSA] in the disability determination and may not affirm the [SSA] on a ground upon which [it] did not rely.").) The Commissioner contends that the "good cause requirement was not referenced by Appeals Council, but it could have [been] . . . ." (Objs. 4:28–5:1.) The Commissioner further notes that the Ninth Circuit has held that obtaining a declaration from a medical source after receiving an unfavorable ALJ decision is not "good cause." (*Id.* 5:1–3 (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) ("A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied.")).)

Here, the Court is unpersuaded by the Commissioner's response that the Appeals Council could have referenced the good cause requirement in its denial of review. The Court reiterates and adopts the R&R's analysis regarding the good cause requirement. (*See* R. & R. 5:20–25.) Additionally, in response to the Commissioner's contention that Plaintiff merely sought out a more favorable report after the ALJ's decision, the Court notes that Plaintiff referred to Dr. Tontz as his treating physician several times throughout the administrative record and submitted a 2015 letter from Dr. Tontz into the record on February 5, 2016, before his ALJ hearing in 2017. (AR 255–56.) Further, the letter submitted by Dr. Tontz in 2018 largely comports with the previous statements attributed to Dr. Tontz in the record. (*See* AR 8.) Therefore, the Court rejects the characterization that Plaintiff merely obtained a more favorable report after his claim was denied. And, overall, the Court is unconvinced by the Commissioner's *post hoc* response that Plaintiff's

new evidence could have been rejected for lack of "good cause" under 20 C.F.R. § 404.970(b)–(c).

In sum, the Appeals Council erred when it determined that Dr. Tontz's 2018 letter did not relate to the period at issue. The result of this error is that the Commissioner's final decision on review improperly excludes Dr. Tontz's opinion. *See Taylor*, 659 F.3d at 1232–33.

### B. Harmless Error Analysis

The Court now turns to whether excluding Dr. Tontz's opinion from the SSA's final decision was harmless error. In doing so, the Court may include Dr. Tontz's 2018 letter in its review. *See Brewes*, 682 F.3d at 1161–62; *see also Taylor*, 659 F.3d at 1232 (noting the court can review an "improperly rejected opinion in [its] overall review of the ALJ's final decision"); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (stating the court can consider additional materials submitted to the Appeals Council because "the Appeals Council addressed them in the context of denying Appellant's request for review"). The Commissioner objects that "any error that may be attributed to the Agency's treatment of [Dr. Tontz's letter] is harmless because the evidence would not likely have changed the ALJ's ultimate conclusion that Plaintiff was no longer disabled." (Objs. 2:9–11.) Further, the Commissioner doubts that Dr. Tontz might have something more to add about Plaintiff's limitations. (*See id.* 6:3–13.)

The Ninth Circuit has recognized that the doctrine of "harmless error applies in the Social Security context." *Stout*, 454 F.3d at 1054. The standard for harmless error remains deferential to the Commissioner, and a court should uphold the decision if the error is "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *accord Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

Therefore, if excluding Dr. Tontz's opinion was "inconsequential to the ultimate nondisability determination," the error is harmless. *See Molina*, 674 F.3d at 1115. The Court must "look at the record as a whole to determine whether the error alters the outcome

- 12 -

18cv2541

of the case." *Id.* In doing so, the Court keeps in mind that "[a]s a general rule, where the 'critical portions' of a treating physician's discredited opinion were presented for the first time to the Appeals Council, '[t]he appropriate remedy . . . is to remand th[e] case to the ALJ' to consider the additional evidence." *Gardner v. Berryhill*, 856 F.3d 652, 657–58 (9th Cir. 2017) (quoting *Harman*, 211 F.3d at 1180).

### 1.     **Impact of Dr. Tontz's Letter**

To revoke previously awarded benefits, the SSA must conclude that the recipient has made "medical improvement" and can return to work. *See Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016). For that medical-improvement determination, the SSA must correctly account for a treating physician's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (explaining treating-doctor rule); 20 C.F.R. § 404.1594(b)(6) (incorporating same standards for cessation-of-benefits cases as original applications). Under the relevant regulation, a treating doctor's opinion is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Trevizo*, 871 F.3d at 675 (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

Under the Ninth Circuit's treating physician rule, the opinion of a treating physician receives the "greatest weight." *E.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The Commissioner should also assign weight to opinions based on the "length, nature, and extent of the treatment relationship; frequency of examination; supportability; and consistency with the overall record." *Fleenor v. Berryhill*, 752 F. App'x 451, 452 (9th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c)(2)–(6); *Trevizo*, 871 F.3d at 676 (holding that the ALJ committed a reversible error by discounting a medical opinion without weighing these factors); *Garrison*, 759 F.3d at 1013 (holding that medical opinions that were presented in a check-box form were still entitled to weight because they were "based on significant experience" and "supported by numerous records").

An ALJ may only disregard an uncontradicted treating physician's opinion for "clear and convincing reasons . . . supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is contradicted by another doctor, the ALJ must still provide "specific and legitimate reasons . . . supported by substantial evidence" before rejecting the opinion. *Id.* There are many legitimate reasons for disregarding a treating physician's opinion, including that the opinion is clearly biased, conclusory, or unsupported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

As noted in the R&R and the Commissioner's Objections, after Plaintiff filed his continuing-benefits claim, the SSA substantially changed the way it treats medical opinions. *Compare* 20 C.F.R. § 404.1527 (claims filed before March 27, 2017), *with* 20 C.F.R. § 404.1520c (claims filed on or after March 27, 2017). The claim here was filed before March 27, 2017, because Plaintiff's cessation-of-benefits claim was filed on July 11, 2014. (AR 72.) Therefore, the relevant law is clear—a treating doctor's opinion receives the "greatest weight." *See, e.g.*, *Tonapetyan*, 242 F.3d at 1148.

Here, the Court disagrees with the Commissioner's suggestion that even if Dr. Tontz's opinion had been properly considered, it would not have affected the disability determination. (Objs. 6:16–19.) Excluding Dr. Tontz's letter was not a harmless error because the letter is material. *See Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) ("New evidence is material when it 'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination.'" (quoting *Booz v. Sec'y of Health Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984))). Dr. Tontz's letter relates to the relevant period as explained above and expresses the opinion of a treating physician, a valid medical source. Dr. Tontz had a history of treating Plaintiff and was operating within his specialty as an orthopedic surgeon, which gave him familiarity with Plaintiff's condition. (AR 8.)

Additionally, Dr. Tontz's letter contradicts the ALJ's finding that Plaintiff could perform medium work, estimating that Plaintiff "will be unable to work indefinitely

because of his severe back injury and complex treatment he requires." (*Id.*) Dr. Tontz indicates that Plaintiff "has trouble with standing, sitting, twisting, stooping, and lifting." (*Id.*) These limitations would interfere with Plaintiff's ability to perform activities for some part of an eight-hour workday, contradicting the ALJ's finding that Plaintiff can perform medium work. (*See* AR 18.) Further, the Court rejects the Commissioner contention that Dr. Tontz will not have something more to add regarding Plaintiff's limitations. (*See* Objs. 6:3–13.) As Plaintiff's orthopedic surgeon, he would have important medical information regarding Plaintiff's medical condition. Dr. Tontz's treating physician opinion contradicts the other medical opinions considered by the ALJ. Therefore, the SSA was obligated to weigh his opinion against the other evidence. *See Trevizo*, 871 F.3d at 675–66. However, this did not occur.

Moreover, aside from Dr. Tontz's 2018 letter, there are several instances in the administrative record where statements from, or attributed to, Dr. Tontz are apparent. (AR 255–56; *see also* AR 44–45, 73, 76, 77, 81, 86.) For example, Plaintiff completed a Recent Medical Treatment form dated February 5, 2016—over a year prior to his hearing before the ALJ—indicating that he was currently being treated by his "surgeon," Dr. Tontz, "who said 'no work'" because his "back is in really bad shape." (AR 255.) Plaintiff attached a letter from Dr. Tontz dated April 22, 2015, stating that Plaintiff is "unable to perform any meaningful work secondary to severe nerve compression and arthritis in his lumbar spine." (AR 255–56.) Dr. Tontz's letter dated January 12, 2018, further supports Plaintiff's references because it indicates that Dr. Tontz has been Plaintiff's treating physician since 2014. (AR 8.) When combined, this evidence indicates that there was harmful error because the Agency discounted—or at the very least, overlooked—a treating physician's opinion.

Yet, the SSA failed to adequately address Dr. Tontz's opinion or obtain additional information that Dr. Tontz might provide. The Commissioner contends that the Agency sent a "slow source letter" to Dr. Tontz but received "no response" from him; however, neither the ALJ nor the Appeals Council addressed this issue as a reason to discount Dr.

Tontz's opinions. (Objs. 4:16–18 (citing AR 340).) Rather, the ALJ's decision does not address Dr. Tontz at all, including his 2015 letter that was already in the record. (*See* AR 11–25; 255–56.) Nor does the existence of a "slow source letter" excuse the Agency's improper consideration of Dr. Tontz's 2018 letter. Moreover, the Court underscores that Social Security proceedings "are inquisitorial rather than adversarial," and the ALJs that preside over them have a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110–11.

Accordingly, Dr. Tontz's 2018 letter is material, relates to the period at issue, and is "owed deference." *See Garrison*, 759 F.3d at 1012–13. Therefore, the Agency's failure to properly address Dr. Tontz's opinion was not "inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115. This means the error was not harmless. *See id.*

### 2. Substantial Evidence Objections

Although the Court is persuaded that the Agency's final decision contains harmful error, the Court considers the Commissioner's remaining objections that involve the substantial evidence standard. The Commissioner objects to the R&R, suggesting that substantial evidence supporting the ALJ's decision makes the legal error here harmless. (Objs. 4:3–5.) The Commissioner contends that the R&R's recommendation to remand is too heavily based on the potential of additional supporting evidence from a treating physician "who has already shown that he is not inclined to provide detail or support for his conclusions." (*Id.* 7:12–15.) The Commissioner claims that Dr. Tontz's letter is conclusory, not medical opinion, and merely projects about future treatment. (*Id.* 5:6–10.) The Commissioner further objects that remanding this case for "weak evidence" is "precisely why" the Commissioner changed the regulations to eliminate the treating physician rule. (*Id.* 4:24–26.)

Instead, the Commissioner suggests that the Court should focus on whether the ALJ's decision was supported by substantial evidence in the record as a whole. (*Id.* 7:7–10.) To this end, the Commissioner contends that the ALJ's decision satisfies the

substantial evidence standard "notwithstanding the speculative and cursory nature of the evidence upon which the R&R advocates remand." (*Id.* 4:3–5.) This is because four examining doctors concluded that Plaintiff had the functional ability to work, and two examiners noted Plaintiff's "exaggeration of symptoms." (*Id.* 5:14–17.)

The Commissioner's arguments miss the mark. Initially, although the treating physician rule may be changed for future cases, it still applies to Plaintiff's claim here. And this Court has the authority to "disturb the denial of benefits" where "the decision 'contains legal error.'" *See Tommasetti*, 533 F.3d at 1038 (quoting *Orn*, 495 F.3d at 630). While the Commissioner may point to the record to show that evidence supports the ALJ's decision, the Court here is concerned with harmful legal error—the SSA's failure to properly address Plaintiff's treating physician's opinion.

Additionally, the Court disagrees with the Commissioner's claim that Dr. Tontz's letter is conclusory and not medical opinion. Dr. Tontz's letter is not conclusory; it provides details and references information about Plaintiff's ongoing treatment. (AR 8.) The letter also relates to the period relevant to the disability determination, as explained above. (*Id.*) Furthermore, Dr. Tontz offers to provide more information, stating: "[p]lease do not hesitate with any questions or concerns." (*Id.*)

For these reasons, the Court rejects the Commissioner's objections concerning the substantial evidence standard. Consequently, the Court adopts the R&R's conclusion that SSA committed a harmful error when it failed to adequately consider and weigh, or reject, Dr. Tontz's opinion.

### C. Appropriate Remedy—Remand

Having concluded the Commissioner committed harmful legal error, the Court must determine the appropriate remedy. "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at

1099–100. Additionally, when the Appeals Council erroneously rejects new treating-physician evidence, a "remand to the ALJ for further consideration is in order," rather than a remand for an award of benefits. *Taylor*, 659 F.3d at 1235; *see also Harman*, 211 F.3d at 1180 (same).

Here, there is clear legal error, but the record has not been fully developed, and it is not clear from the existing record that the ALJ would be required to find Plaintiff disabled on remand if the improperly discounted medical opinion was credited as true. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). However, it is clear that additional fact-finding is needed in this case. Because neither the Appeals Council nor the ALJ properly addressed Dr. Tontz's opinion, further administrative proceedings would allow the SSA to consider the opinion in light of the existing record, and to further develop the record if necessary. That the ALJ did not have an opportunity to consider material evidence because it was presented for the first time to the Appeals Council is yet another reason to conclude that remanding for further proceedings is the appropriate remedy. *See Gardner*, 856 F.3d at 657–58.

Accordingly, the Court is convinced that remand is appropriate in order for the ALJ to consider Dr. Tontz's opinion and for additional fact-finding. *See Taylor*, 659 F.3d at 1235.

## V. CONCLUSION

In light of the foregoing, the Court **OVERRULES** the Commissioner's objections (ECF No. 31), **ADOPTS** the R&R (ECF No. 30), **GRANTS** Plaintiff's motion (ECF No. 22), **DENIES** the Commissioner's cross-motion (ECF No. 24), and **REMANDS** this action for further proceedings and factual development consistent with this order. *See* 42 U.S.C. §§ 405(g), 1383(c).

**IT IS SO ORDERED.**

**DATED: August 20, 2020**

Hon. Cynthia Bashant
United States District Judge